1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

REGINALD ROBERTSON,

Plaintiff,

v.

J. KAISER-NEVEL[1], et al.,

Defendants.

Case No. 20-cv-02523 BLF

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

(Docket No. 44)

Plaintiff, a pretrial detainee, filed the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against staff at the Santa Rita Jail ("Jail") in Dublin, California.  Dkt. No. 1. The Court found the third amended complaint, Dkt. No. 27, stated cognizable claims for retaliation and violation of due process, exercised supplemental jurisdiction over state law claims, and ordered Defendants D. Bussell, J. Alvarez, M. Ella, G. Harris, C. Wong, and Alameda County to file a motion for summary judgment or other dispositive motion.  Dkt. No. 35.

Defendants filed a motion for summary judgment pursuant to Rule 56 on the ground

[1] Although Mr. J. Kaiser-Nevel was named as a defendant in the second amended complaint, Dkt. No. 21, he was dismissed from this action as there were no cognizable claims against him.  Dkt. No. 24; *see infra* at 15, fn. 8.

1
2
3
4
5
6

that undisputed material facts establish that Defendant Bussell did not retaliate nor act with deliberate indifference, Plaintiff failed to exhaust his retaliation claim, and the state law claims must be dismissed.  Dkt. No. 44.  In support, Defendants filed declarations and exhibits.[2]  *Id.*  Plaintiff filed opposition along with a declaration and exhibits in support, Dkt. No. 49, and a supplemental opposition with the court's leave, Dkt. No. 56. Defendants filed a reply.  Dkt. No. 57.

7
8

For the reasons stated below, Defendants' motion for summary judgment is **GRANTED**.

9
10

**DISCUSSION**

11

**I.      Statement of Facts[3]**

12

**A.      January 22, 2020 – Verbal Altercation with Defendant Bussell**

13
14
15
16

According to Plaintiff, he was involved in a verbal dispute with Defendant D. Bussell, a Sheriff's Technician, which ended with each threatening the other with a "write-up."  Dkt. No. 27 at 15.  Plaintiff claims the injuries he suffered the next day were a direct result of this conflict with Defendant Bussell.  *Id.*

17
18
19

In their summary judgment motion, Defendants do not dispute Plaintiff's allegation that there was a dispute between Plaintiff and Defendant Bussell on January 22, 2020. Defendant Bussell's declaration is also silent in this regard.  Dkt. No. 44-3.

20

**B.      January 23, 2020 – Visiting Booth Incident**

21

On the evening of January 23, 2020, Plaintiff had a non-contact visit in the visiting

22
23
24
25
26

[2] In support of their summary judgment motion, Defendants submit the declarations of Defendant Deputy J. Alvarez, Dkt. No. 44-1, non-party Rhonda Bailey (Deputy Clerk of the Board of Supervisors for Alameda County), Dkt. No. 44-2, Defendant Sheriff's Technician D. Bussell, Dkt. No. 44-3, non-party Deputy Lt. Carrie Carone, Dkt. No. 44-4, Defendant Deputy M. Ella, Dkt. No. 44-5, non-party Deputy Katherine Goodall, Dkt. No. 44-6, Defendant Deputy G. Harris, Dkt. No. 44-7, non-party Sheriff's Technician J. Kaiser-Nevel, Dkt. No. 44-8, and Defendant C. Wong, Dkt. No. 44-9.

27

[3] The following facts are not disputed unless otherwise stated.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

area of Housing Unit 22 ("HU-22") at Santa Rita Jail ("SRJ").  This action is based on the undisputed fact that Plaintiff was not immediately released from the visiting booth after the visit concluded but was detained therein for over three hours.

On January 23, 2020, Defendant Bussell had a work shift in HU-22 from 6:00 a.m. to 6:00 p.m.  Bussell Decl. ¶ 3.  Defendant Bussell left HU-22 within a few minutes after his replacement, a non-party, Sheriff's Technician Jason Kaiser-Nevel, arrived.[4]  *Id.*; Kaiser-Nevel Decl. ¶ 3.  Mr. Kaiser-Nevel arrived at or before 6:00 p.m. that night and had taken over as technician in HU-22 by around 6:00 p.m.  *Id.*  As part of his duties as Sheriff's Technician for HU-22, Mr. Kaiser-Nevel maintains a "red book" which is a daily log of events that occur in the housing unit, including approximate times when people arrive and leave work.  Kaiser Nevel Decl. ¶ 5.  In support of their summary judgment motion, Defendants submit a copy of HU-22's red book for January 23, 2020, as Exbibit D.  *Id.*; Carone Decl., Ex. D.[5]  This red book indicates that Mr. Kaiser-Nevel arrived at HU-22 at 1800 hours, i.e., 6:00 p.m., that evening.  *Id.*

Another technician, a non-party, Ms. Katherine Goodall, arrived at HU-22 shortly after Mr. Kaiser-Nevel.  Kaiser-Nevel Decl. ¶ 4; Goodall Decl. ¶ 3.  Ms. Goodall was the "meal relief" technician that evening; she worked in various housing units over the course of her work shift, taking over as needed while the assigned technicians took their meal breaks.  *Id.*  She was in HU-22 during the time that Plaintiff remained in the visiting area

---

[4] *See supra* at 1, fn. 1.

[5] Deputy Carone is the authorized records custodian for the Alameda County Sheriff's Office as it relates the "red book" logs that are prepared and maintained by the Sheriff's Technicians within each Housing Unit, including HU-22, at Santa Rita Jail.  Carone Decl. ¶ 6.  She attests that Sheriff's Technicians log, among other things, the approximate time that people arrive and leave the housing unit.  *Id.*  Deputy Carone attests that the records are kept and maintained in the normal course of business by the Alameda County Sheriff's Office.  *Id.*  She attests that the copy submitted under Exhibit D is a true and correct copy of HU-22's red book log for January 23, 2020.  *Id.* ¶ 7.  The Court notes that the copy of Exhibit D attached to Mr. Kaiser-Nevel's declaration shows the complete log sheet, Dkt. No. 44-8 at 7, while the copies attached with other declarations are only partial copies.

that night.  Goodall Decl. ¶¶ 3-4.  Also working in HU-22 that evening was Defendant Deputy Harris, who began his shift at approximately 5:45 p.m.  Harris Decl. ¶ 3.  Two other deputies were working in HU-22 when Defendant Harris arrived – Defendants Charles Wong and Michael Ella.  *Id.*; Ella Decl. ¶ 4; Wong Decl. ¶ 4.

Also in support of their summary judgment motion, Defendants submit the video from Defendant Harris's body-worn-camera ("BWC").  Harris Decl. ¶4, Ex. C (hereinafter "Harris BWC"); Carone Decl. ¶ 5, Ex. C.[6]  According to Defendants, Defendant Harris' BWC date and time stamp is off by 8 hours; the cameras were set to Greenwich Mean Time, which is 8 hours ahead of Pacific Standard Time.  Harris Decl. ¶ 5.  As such, although the date and time stamp reads, "2020-01-24 02: [xx:xx]" the actual time the video was captured was January 23, 2020 at 6:[xx:xx] p.m. (18:00 hours).  *Id.*  In addition, the BWCs, when they are not turned on, record 30 seconds of video passively, without audio; the 30-second segment records over itself and is not retained.  *Id.*; Carone Decl. ¶ 3.  Once a BWC is turned on, the audio comes on, and any not-yet-overwritten video that preceded the camera being turned on is added to the footage.  *Id.*  Hence, when a BWC video is activated, there is typically the short section of silent footage at the beginning of that footage.  *Id.*

On the evening of January 23, 2020, Plaintiff was one of three inmates who received the same visitor: a non-attorney representative (Mr. Williamson) from Bay Area Community Services.  Harris Decl. ¶ 4; Carone Decl. ¶ 8, Ex. E[7] at p. 2; Kaiser-Nevel

---

[6] Deputy C. Carone is also the authorized records custodian for the Alameda County Sheriff's Office as it relates to BWCs captured by Alameda County Sheriff's Office deputies during the course and scope of their employment.  Carone Decl. ¶ 4.  Deputy Carone attests that BWC video records are created at the time at or shortly after the time of the events depicted therein, and that the videos are thereafter kept and maintained in the normal course of business by the Alameda County Sheriff's Office.  *Id.*  Deputy Carone attests that the BWC video submitted as Exhibit C is a true and correct copy of the BWC uploaded by Deputy Harris regarding his actions on the night of January 23, 2020, escorting three inmates up to the visiting area of HU-22.  *Id.* ¶ 5.

[7] Deputy Carone attests that she is also the authorized records custodian for the Alameda

Decl. ¶ 10.  Mr. Kaiser-Nevel recalls Defendant Harris escorting the three inmates up to the visiting area at approximately 6:30 p.m., to receive their visitor.  Kaiser-Nevel Decl. ¶ 10.  As Defendant Harris' BWC video shows, the other two inmates arrived at the visiting area before Plaintiff, and Defendant Harris escorted them into visiting booths #10, and #9, in that order, unlocking and opening the doors for each of them.  Harris Decl. ¶ 7, Harris BWC at 0:00-02:03.  At 6:33 p.m., Plaintiff arrived at the door to the visiting area to be escorted to a visiting booth.  Harris Decl. ¶ 8, Harris BWC at 2:03.  Defendant Wong opened the door for Plaintiff at the bottom of the visiting area stairs, while Defendant Harris waited for Plaintiff at the top of those stairs.  *Id.* at 2:03-2:12; Wong Decl. ¶¶ 5-7.  Plaintiff walked up the stairs, and Defendant Harris preceded him to the visiting booth #8, which Defendant Harris unlocked and opened, allowing Plaintiff to enter.  Harris Decl. ¶ 8, Harris BWC at 2:12-2:35.  Plaintiff entered visiting booth #8 and closed the door behind him, and the door automatically locked.  *Id.*  Defendant Harris then exited the visiting area. *Id.* at 2:32-2:52.  No sheriff's technician was present in Visiting Control at any time on the night of January 23, 2020.  Harris Decl. ¶ 10; Kaiser-Nevel Decl. ¶ 6; Goodall Decl. ¶ 5.  Defendant Ella was not involved in facilitating these visits and had no contact with Plaintiff during or after these visits.  Ella Decl. ¶ 6.

Shortly thereafter, Defendants Wong and Ella left HU-22 because their work shifts had ended for the day.  Wong Decl. ¶ 9; Ella Decl. ¶ 7.  Per HU-22's red book log for January 23, 2020, they were off duty as of 18:45 (6:45 p.m.).  Carone Decl., Ex. D.  Deputies Wong and Ella state that after they left HU-22 at the end of their shift, they did

---

County Sheriff's Office as it relates to grievances records, including inmate grievances and the Sheriff's Office's responses thereto.  Carone Decl. ¶ 8.  After searching the grievances presented by Plaintiff starting from January 1, 2020 to December 16, 2021, Deputy Carone found only one grievance relating to the January 23, 2020 incident, in which Plaintiff complained about remaining in the visiting area in HU-22 for an unduly prolonged period of time (Grievance No. 20-0319).  *Id.*  She attests that the copy submitted under Exhibit E is a true and correct copy of that grievance and the Sheriff's Office's response to that grievance.  *Id.*

not return on January 23, 2020.  Wong Decl. ¶ 10; Ella Decl. ¶ 8.  When Deputies Wong and Ella left HU-22 at the end of their shift, they were unaware of any need to retrieve or otherwise assist Plaintiff.  Wong Decl. ¶ 9; Ella Decl. ¶ 7.  No one in Housing Control advised them of any such need.  *Id.*

Control over, and communication with, the visiting booths in HU-22 are split between two locations.  Visiting booths #3 through #9 have buzzers that, when depressed, buzz into the Visiting Control for HU-22, and only a person in Visiting Control can remotely unlock those visiting booth doors.  Bussell Decl. ¶ 6; Kaiser-Nevel Decl. 7; Goodall Decl. ¶ 6.  Visiting booths #10 and #11 have buttons that, when depressed, buzz into the general Housing Control Room for HU-22 ("Housing Control"); then a person in Housing Control can remotely unlock/open those visiting booth doors.  Bussell Decl. ¶¶ 5, 6; Kaiser-Nevel Decl. ¶¶ 6-7; Goodall Decl. ¶ 6.  This distinction between visiting booths #10 and #11 on the one hand, and #3 through #9 on the other, is due to certain unique features of visiting booths #10 and #11.  *Id.*  No one in HU-22 Housing Control can hear the buzzers depressed in visiting booths #3 through #9, nor can those visiting booth doors be remotely unlocked/opened from Housing Control.  *Id.*

A person in Housing Control also cannot see directly into the visiting area.  Alvarez Decl. ¶ 6; Ella Decl. ¶ 9.  Housing Control is located across the main HU-22 hallway from the door to the visiting area.  Bussell Decl. ¶ 7; Kaiser-Nevel Decl. ¶ 8; Goodall Decl. ¶ 7. It sits above the main floor of HU-22 and its windows look down into the living areas of HU-22.  *Id.*  Persons in Housing Control cannot view, via a direct line of sight, any part of the visiting area.  *Id.*; Harris Decl. ¶ 9.

There is a video camera in the visiting area that points down the inmate hallway in that area, and that camera feed is fed into a screen in HU-22 Housing Control.  Bussell Decl. ¶ 8; Kaiser-Nevel Decl. ¶ 9; Goodall Decl. ¶ 8; Alvarez Decl. ¶ 6; Ella Decl. ¶ 9. However, this camera's angle is such that it does not capture anything/anyone sitting inside

United States District Court
Northern District of California

the visiting booths. *Id.*; Harris Decl. ¶ 9. This is intended to afford privacy to inmates and their visitors during visits. Bussell Decl. ¶ 8; Kaiser-Nevel Decl. ¶ 9. However, this feature means that no one in Housing Control on the night of January 23, 2020, could see via the video camera that anyone was present in visiting booths #8 and #9. *Id.*; Ella Decl. ¶ 9.

According to Plaintiff, when he and the other two inmates were done with their visits on the night of January 23, 2020, which he estimates took approximately 15 minutes total, they each depressed the intercom buttons in their respective booths (#8, #9, and #10), but only the inmate in visiting booth 10 received a response and was released. Dkt. No. 27 at 11-12. Plaintiff and the other inmate, in visiting booths #8 and #9 respectively, received no response. *Id.* According to Defendants, this lack of response was due to the fact, as described above, the buzzers in those two booths did not ring into Housing Control, but rang instead to the Visiting Control booth which was unoccupied. Kaiser-Nevel Decl. ¶¶ 6-7, 12; Bussell Decl. ¶¶ 5-8.

Defendant Harris did not know that the intercom buttons in visiting booths #8 and #9 did not buzz into Housing Control, and believed, based on past experience, that the inmates he placed into visiting booths #8-10 could communicate with Housing Control, and could be released remotely by Housing Control from those booths without any need for his assistance. Harris Decl. ¶ 10. He believed that the visitor would let Housing Control know he was done, and the technician would open the visitor's door and remotely open the doors for the inmates in all of the visiting booths, so that they could leave the visiting area and return to the pod. *Id.* Defendant Harris believed that this is what had occurred, based on the fact that he, later in the evening, saw one of the three inmates who he had taken to the visiting area, walking around in HU-22. *Id.* ¶ 11. When he saw this person, he assumed that all three inmates had been released from the visiting area and had returned to HU-22. *Id.* He further assumed that, if his help was needed to retrieve inmates

7

from the visiting area, the Sheriff's Technician in Housing Control would have let him know. *Id*

Mr. Kaiser-Nevel was the technician sitting in front of the control panel in Housing Control for HU-22 on the night of January 23, 2020, when the inmate in booth #10 buzzed to be released.  Kaiser-Nevel Decl. ¶¶ 4, 12; Goodall Decl. ¶¶ 3-4.  Mr. Kaiser-Nevel responded by depressing the button to unlock and open visiting booth #10's door, allowing that inmate to exit.  Kaiser-Nevel Decl. ¶ 12.  He recalls thereafter asking Ms. Goodall, who was sitting at the "front" (window-side) of Housing Control to contact a deputy and ask them to retrieve the other two inmates from the visiting area.  *Id.*  Mr. Kaiser-Nevel then became busy and distracted by his other duties and other events taking place in HU-22 that evening, and did not notice that the two inmates were not in HU-22.  *Id.* ¶ 13.  Mr. Kaiser-Nevel thought Ms. Goodall had done as he requested, and only later discovered that his message was not received or carried out.  *Id.* ¶ 13.  Ms. Goodall does not recall hearing Mr. Kaiser-Nevel make this request to arrange for the other two inmates to be retrieved from visiting.  Goodall Decl. ¶¶ 9-10.  Ms. Goodall also believed that Defendant Harris knew that the buzzers in visiting booths #8 and #9 did not buzz into Housing Control.  *Id.* ¶ 6.  Ultimately, no deputy was alerted regarding the need to retrieve these inmates from the visiting area.  *Id.* ¶¶ 9-13; Kaiser-Nevel Decl. ¶¶ 12-15; Harris Decl. ¶ 12.

What Ms. Goodall recalls is that January 23, 2020, was a busy night for staff, and that Defendant Harris in particular was called away to perform various duties that night.  Goodall Decl. ¶ 10.  Defendant Harris was busy during the evening of January 23, 2020.  *Id.*; Harris Decl. ¶¶ 12-13.  He oversaw pill call at 6:45 to 7:45, and then he was summoned to another housing unit at approximately 9:00 p.m. to assist in a cell search, then returned to HU-22 to investigate and prepare a Prison Rape Elimination Act report which took an hour.  Harris Decl. ¶ 13.  Shortly after 10:00 p.m., he had to leave HU-22 to escort an inmate to a different part of the jail to be put into a safety cell.  *Id*.

Meanwhile, Defendant Deputy J. Alvarez arrived at HU-22 at approximately 7:20 p.m.  Alvarez Decl. ¶ 3; Kaiser-Nevel Decl., Ex. D.  He had just completed a work shift at the courthouse located in downtown Oakland, and so was working overtime in HU-22 as a housing unit deputy.  *Id.*  The only other deputy in HU-22 at that time was Defendant Harris.  *Id.*  Defendant Alvarez was unaware when he arrived at HU-22 that there had been any visits earlier that evening, nor that there were any inmates still in the visiting area.  *Id.* ¶ 4.

Later in the evening, sometime shortly before 10:00 p.m., Defendant Alvarez recalls hearing yelling coming from somewhere off the main hallway of HU-22, and trying to track down its source.  Alvarez Decl. ¶ 7; Dkt. No. 27 at 14.  After searching the cells off the main hallway, and nurse's station (also off the main hallway), he checked the visiting area and discovered Plaintiff and the other inmate still in the visiting booths.  *Id.*  He promptly removed them from those booths and took them to cells with toilets and drinking water access, so that they could use those facilities.  Alvarez Decl. ¶¶ 7-8.  He also alerted a nurse since the inmates had missed pill call.  *Id.* ¶ 8.  Defendant Alvarez states that he was surprised to find any inmates in this area at that time, and that when he informed Mr. Kaiser-Nevel and Defendant Harris about this development, they also expressed shock and surprise.  *Id.*  Forty-five minutes later, Plaintiff received his psychotropic and pain medications and then was allowed to return to his assigned cell.  *Id.*; Dkt. No. 27 at 14.

Plaintiff accuses Defendant Bussell of orchestrating his prolonged detention in the visiting booth in retaliation for a verbal altercation between them the day before.  Dkt. No. 27 at 16.  According to Defendants, Defendant Bussell was not present when the unfortunate incident involving Plaintiff occurred, nor did he tell, request, or direct anyone who was in HU-22 that night to leave Plaintiff in the visiting area for several hours, or take any other adverse action against Plaintiff.  Bussell Decl. ¶¶ 3, 5, 9, 10; Kaiser-Nevel Decl. ¶¶ 3, 14-16; Harris Decl. ¶¶ 3, 15-18, *passim*; Wong Decl. ¶¶ 3, 8, 13; Ella Decl. ¶ 11;

Goodall Decl. ¶¶ 11-12; Alvarez Decl. ¶¶ 9-10.

In its screening order of the operative complaint, the Court found that Plaintiff's allegations against Defendant Bussell were sufficient to state a retaliation claim as well as a Fourteenth Amendment claim for deliberate indifference to the risk of harm.  Dkt. No. 35 at 3-4.  The Court also exercised supplemental jurisdiction over Plaintiff's state law claims against Defendant Bussell for negligence and violating state regulations, as well as against Defendants Alvarez, Ella, Harris, Wong, and Alameda County for failing in their statutory duties.  *Id.* at 4.

### C.    Inmate Grievance

Plaintiff submitted one grievance about the incident on January 26, 2020.  Carone Decl. ¶ 8, Ex. E at pp. 2-3 (Grievance no. 20-0319 & response thereto).  In the grievance, Plaintiff alleged that the SJR staff were "negligent and failed to perform their duty" in failing to retrieve him and the other inmate from the visiting booths.  *Id.* at 2.  The grievance did not assert that the detention was retaliatory or intentional, nor did it mention or refer to any prior verbal dispute between Plaintiff and Defendant Bussell on January 22, 2020, that lead to Plaintiff's prolonged detention in the visiting area.  *Id.*

## II.    Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the

United States District Court
Northern District of California

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.  If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted); Fed. R. Civ. P. 56(e).  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corporation Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252).  "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W.*

*Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

### A.    Retaliation

Plaintiff claims that Defendant Bussell kept him trapped in the visiting booth for several hours in order to retaliate against him for threatening to file an inmate grievance against him during an argument on January 22, 2020, and that Defendant Bussell's actions chilled the exercise of his First Amendment rights and did not reasonably advance a legitimate correctional goal. Dkt. No. 27 at 15.

### 1.    Exhaustion

Defendants assert that Plaintiff's retaliation claim fails because he did not exhaust administrative remedies as to that claim. Dkt. No. 44 at 17. In opposition, Plaintiff asserts that Grievance No. 20-0319 was affirmed at the first-formal level and he therefore meets the exhaustion requirement. Dkt. No. 49 at 3.

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and no longer left to the

discretion of the district court. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards." *Id*. Even when the relief sought cannot be granted by the administrative process, i.e., monetary damages, a prisoner must still exhaust administrative remedies. *Id*. at 85-86 (citing *Booth*, 532 U.S. at 734). The PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies. *Id*. at 93. An action must be dismissed unless the prisoner exhausted his available administrative remedies <u>before</u> he or she filed suit, even if the prisoner fully exhausts while the suit is pending. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002); *see Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006) (where administrative remedies are not exhausted before the prisoner sends his complaint to the court it will be dismissed even if exhaustion is completed by the time the complaint is actually filed). But "a prisoner can cure [exhaustion] deficiencies through later filings, regardless of when he filed the original action" because "[e]xhaustion requirements apply based on when a plaintiff files the operative complaint." *Saddozai v. Davis*, 35 F.4th 705, 708 (9th Cir. 2022) (citations and internal quotation marks omitted). Thus, a prisoner who files an original complaint (when he had not exhausted his remedies) and then files an amended complaint (when he had fully exhausted his remedies) satisfies the exhaustion requirement and is not subject to dismissal for lack of exhaustion. *See id.* at 708-10.

Failure to exhaust under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (PLRA), is "an affirmative defense the defendant must plead and prove." *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007). Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required to specifically plead or demonstrate exhaustion in their complaints. *Id.* at 215-17. In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Albino v. Baca*, 747 F.3d 1162, 1166

(9th Cir. 2014) (en banc).[8]

The defendant's burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that available administrative remedy. *Id*. at 1172; *see id*. at 1176 (reversing district court's grant of summary judgment to defendants on issue of exhaustion because defendants did not carry their initial burden of proving their affirmative defense that there was an available administrative remedy that prisoner plaintiff failed to exhaust); *see also Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir. 2005) (as there can be no absence of exhaustion unless some relief remains available, movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting results of relief already granted as result of that process). Once the defendant has carried that burden, the prisoner has the burden of production. *Albino*, 747 F.3d at 1172. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Id*. But as required by *Jones*, the ultimate burden of proof remains with the defendant. *Id*.

After carefully reviewing the submitted evidence, the Court finds Plaintiff failed to exhaust a retaliation claim against Defendant Bussell based on the January 23, 2020 incident. Plaintiff does not dispute that the only grievance he filed regarding the over-detention was Grievance No. 208-0319, as identified by Defendants. *See supra* at 9-10; Carone Decl. ¶ 8, Ex. E. In this grievance, Plaintiff alleged that SJR staff were "negligent and failed to perform their duty." *id.* at 3. He stated that the Housing Unit Technician at the time was "possibly Mr. Bussell or Mr. Kaiser (not certain of identify)." *Id.* at 2. There

---

[8] In *Albino*, the Ninth Circuit, sitting en banc, overruled *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the PLRA, should be raised by a defendant as an unenumerated Rule 12(b) motion. *Albino*, 747 F.3d at 1166. "[A] failure to exhaust is more appropriately handled under the framework of the existing rules than under an 'unenumerated' (that is, non-existent) rule." *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

is no mention of a conflict with Defendant Bussell the day before, or any allegation that the incident occurred due to retaliatory motives. *Id.* Accordingly, Defendants have met their burden of establishing that there was an administrative remedy available to Plaintiff and that he did not exhaust that remedy with respect to a retaliation claim against Defendant Bussell. *See Albino*, 747 F.3d at 1166. In response, Plaintiff has failed to come forward with evidence showing that there was something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Id.* Nor has Plaintiff shown that he cured this deficiency by the time he filed the third amended complaint. *See Saddozai*, 35 F.4th at 708. Accordingly, the retaliation claim is dismissed for failure to exhaust administrative remedies. *See McKinney*, 311 F.3d at 1199.

## 2.    Retaliation – On the Merits

Notwithstanding Plaintiff's failure to exhaust, Defendants have also answered on the merits of the retaliation claim and Plaintiff has responded. The Court will therefore consider the claim on the merits.

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Defendants assert that Plaintiff cannot prevail on his retaliation claim against Defendant Bussell because Defendant was not present during, nor was he in any way involved in, the over-detention. Dkt. No. 44 at 16. They assert that the first element for retaliation cannot be met because Defendant Bussell was not on duty when the over-detention occurred. Furthermore, Defendant Bussell denies harboring any ill will towards Plaintiff, nor did he intend to cause, or actually cause, nor try to orchestrate or facilitate,

1   the incident that happened to Plaintiff on the evening of January 23, 2020.  Bussell Decl.

2   ¶¶ 3, 5, 9, 10.  Defendants also assert that the second and third elements cannot be met

3   because the technicians on duty during the incident, Mr. Kaiser-Nevel and Ms. Goodall,

4   had no negative interactions with Plaintiff and deny intentionally causing the over-

5   detention for any reason and that it was inadvertent/accidental and unintentional.  Kaiser-

6   Nevel Decl. ¶¶ 3-16; Goodall Decl. ¶¶ 3-13.  Defendants point out that Plaintiff does not

7   allege otherwise.  Dkt. No. 44 at 16.

8        Defendants also point out that the Court advised Plaintiff in its January 6, 2021

9   Order, that if the over-detention was merely accidental, i.e., done by Mr. Kaiser-Nevel,

10  then a retaliation claim would not lie.  Dkt. No. 44 at 16-17, citing Dkt. No. 24 at 3:21-4:1.

11  In response, Plaintiff filed a third amended complaint in which he named only Defendant

12  Bussell as a defendant on this claim.[9]  *Id.*  Neither Ms. Goodall nor Mr. Kaiser-Nevel had

13  any negative interactions with Plaintiff prior to the January 23, 2020 incident.  *Id.*; Kaiser-

14  Nevel Decl. ¶¶ 3-16; Goodall Decl. ¶¶ 3-13.  Lastly, Defendants assert that all the other

15  individual defendants, who were present at the time of the incident, affirm that the over-

16  detention was an accident, and deny any intention, foreknowledge, planning, or

17  involvement in any plan, to leave Plaintiff in the visitation cells for any reason, let alone in

18  order to punish Plaintiff.  Dkt. No. 44 at 17; Harris Decl. ¶¶ 3, 10-18; Alvarez Decl. ¶¶ 9-

19  10; Ella Decl. ¶ 11; Wong Decl. ¶¶ 9-13.

20       In opposition, Plaintiff asserts it is undisputed that he and Defendant Bussell had a

21  verbal dispute on January 22, 2020, during which threats of a "write-up" were exchanged.

22  Dkt. No. 49 at 2.  Plaintiff asserts that Defendant Bussell's threat of adverse action against

23  him for engaging in free speech under the First Amendment violated a clearly established

24  right.  *Id.*  He also objects to the admission of the red book log because it is

25

26  _____

27  [9] Accordingly, Mr. Kaiser-Nevel was terminated as a party to this action on January 6,
    2021.  Dkt. No. 24.

28                                        16

"indecipherable as to who authored" the entries and is inadequate as a record of events which occurred on the date at issue. *Id.* at 4. Plaintiff also "concurs" with Defendant Harris' BWC in that it accurately records his arrival at the visiting area but asserts that there is a 30-minute discrepancy in various other documents submitted by Defendants "or as provided in Dkt. #42, 3, at #18." *Id.* Plaintiff asserts that the time he arrived at the visiting area was 6:02 p.m., rather than 6:33 p.m. *Id.* Lastly, Plaintiff asserts that Defendants owed him duties under their own policies which they failed to carry out, which also resulted in the violation of state laws. *Id.* at 4-5, 8. Then in his supplemental opposition, Plaintiff asserts that he has established retaliation and due process claims. Dkt. No. 56 at 2-3. First, he asserts that the injuries he suffered on January 23, 2020, occurred within 24 hours of his dispute with Defendant Bussell, whose threats "evidenced retaliatory harm/intent." *Id.* at 2. Plaintiff asserts that Defendants are falsely alleging that the incident was accidental and unintentional, but in "actually, Defendants' arbitrary and capricious acts over the course of four-hours surpassed deliberate indifference and evidence all elements of retaliation." *Id.* at 3.

In reply, Defendants assert that Plaintiff's opposition and supplemental do not undermine their summary judgment motion because his arguments do not change the fact that Defendant Bussell was not present during the incident nor involved in the over-detention. Dkt. No. 57 at 2. This fact is confirmed by the other Defendants, who all affirm that the incident was an unfortunate accident with an explanation as to how it occurred. *Id.*

Viewing the evidence in the light most favorable to Plaintiff, the Court finds there exists no genuine dispute as to any material fact relating to Plaintiff's retaliation claim against Defendant Bussell. Plaintiff insists that their conflict from the day before caused the "adverse action" the following day. *See supra* at 13. However, Defendant Bussell attests that he left before the incident occurred, and several other Defendants and witnesses who were present attest that Defendant Bussell was not involved in the incident. *Id.* at 2-8.

17

It matters not whether the actual time was 6:02 or 6:33 p.m., since there is no dispute that Defendant Bussell left within a few minutes of his replacement, Mr. Kaiser-Nevel, arriving at or before 6:00 p.m. *See supra* at 2-3. Defendants have also provided a detailed explanation for why the over-detention occurred and their own surprise at what they characterize as an unfortunate incident. *Id.* In response, Plaintiff fails to point to facts or provide any evidence establishing that Defendant Bussell was either present or somehow orchestrated the over-detention. Rather, Defendant Bussell denies ever doing so, and several other Defendants and non-party witnesses attest that Defendant Bussell did not tell, request, or direct any of them, who were in HU-22 that night, to leave Plaintiff in the visiting area for several hours, or take any other adverse action against Plaintiff. Bussell Decl. ¶¶ 3, 5, 9, 10; Kaiser-Nevel Decl. ¶¶ 3, 14-16; Harris Decl. ¶¶ 3, 15-18, *passim*; Wong Decl. ¶¶ 3, 8, 13; Ella Decl. ¶ 11; Goodall Decl. ¶¶ 11-12; Alvarez Decl. ¶¶ 9-10. In contrast, Plaintiff merely speculates that Defendant Bussell made an agreement with staff to orchestrate this incident, without any supporting evidence.

With respect to Plaintiff's objections to the red book log, Mr. Kaiser-Nevel attests to the authenticity of this evidence as does Ms. Carone, the authorized records custodian for the Alameda County Sheriff's Office, which is sufficient to admit this evidence. *See supra* at 3. Nevertheless, even if this evidence was not admitted, the declarations submitted by Defendants contain sufficient information to establish when certain individuals arrived and departed HU-22 that evening. *Id.* at 3-8. Ultimately, Plaintiff makes only speculative and conclusory allegations which are not sufficient to meet his burden of designating specific facts showing that there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. According to the evidence, Plaintiff was in fact unaware who was in the Housing Control during his detention, and merely speculated that it was Defendant Bussell. On the other hand, the evidence submitted by Defendants shows that Mr. Kaiser-Nevel and Ms. Goodall were the technicians in Housing Control at the time,

and there is no allegation that these two non-parties had any retaliatory motives against Plaintiff.

Based on the undisputed facts, Defendants have shown there is an absence of a genuine dispute of material fact with respect to the retaliation claim against Defendant Bussell. *See Celotex Corp.*, 477 U.S. at 323.  Plaintiff has failed to meet his burden of identifying with reasonable particularity the evidence that precludes summary judgment, *see Keenan*, 91 F.3d at 1279, or submit evidence from which a jury could reasonably render a verdict in his favor, *In re Oracle Corporation Securities Litigation*, 627 F.3d at 387.  Accordingly, Defendant Bussell is entitled to summary judgment on this claim.  *See Celotex Corp.*, 477 U.S. at 323.

### B.    Fourteenth Amendment - Deliberate Indifference

Plaintiff also claims that Defendant Bussell deliberately kept him trapped in the visiting booth for several hours, which the Court liberally construed as stating a Fourteenth Amendment claim for deliberate indifference to the risk of harm to Plaintiff.  Dkt. No. 35 at 4.

Inmates who sue prison officials for damages for injuries while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause.  *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (en banc).  But under both clauses, the inmate must show that the prison official acted with deliberate indifference.  *Id.* at 1068.   A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  *See Farmer*, 511 U.S. at 837.  The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference.  *Id*.

The Court finds there exists no genuine dispute as to any material fact relating to

19

Plaintiff's due process claim against Defendant Bussell.  As with the retaliation claim above, there is no evidence that Defendant Bussell was present during the incident or that he orchestrated Plaintiff's over-detention.  In response, Plaintiff merely asserts that Defendants have a mandatory duty to conduct safety checks and that they failed to do so. Dkt. No. 56 at 3.  However, as Defendants correctly dispute, this allegation simply does not support a federal claim.  Dkt. No. 57 at 5.  Plaintiff has presented no evidence showing that Defendant Bussell, or any Defendant, knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk.  Rather, the evidence submitted by Defendants shows that no one was aware that Plaintiff and another inmate had not been released from the visiting booths after their visitations had ended.  Even if they should have been aware, i.e., by conducting mandatory safety checks as Plaintiff alleges, the evidence shows that none of the Defendants, or any SRJ staff, was actually aware that Plaintiff was stuck in the visiting booth.  Since no Defendant was aware, then it cannot be said that any of them acted with deliberate indifference by disregarding a risk of serious harm to Plaintiff.

Based on the undisputed facts, Defendants have shown there is an absence of a genuine dispute of material fact with respect to the due process claim against Defendant Bussell.  *See Celotex Corp.*, 477 U.S. at 323.  Plaintiff has failed to meet his burden of identifying with reasonable particularity the evidence that precludes summary judgment, *see Keenan*, 91 F.3d at 1279, or submit evidence from which a jury could reasonably render a verdict in his favor, *In re Oracle Corporation Securities Litigation*, 627 F.3d at 387.  Accordingly, Defendant Bussell is entitled to summary judgment on this claim.  *See Celotex Corp.*, 477 U.S. at 323.

**C.     State Law Claims**

The only remaining claims are Plaintiff's state law claims against Defendant Bussell for negligence and violating state regulations, and against Defendants Alvarez, Ella, Harris, Wong, and Alameda County for failing in their statutory duties.  *See supra* at

9.  Defendants assert that the state law claims fail because Plaintiff did not present a timely government claim to the County of Alameda as required by California's Government Claims Act, and he cannot cure this deficiency.  Dkt. No. 44 at 19.  Defendants also assert that even if the state law claims were not barred, the Court should decline to exercise jurisdiction over these state law claims because there are no federal claims remaining in this action.  *Id.* at 21.

### 1.    California Tort Claims Act

Under California law, the filing of a tort claim in the time and manner prescribed is a prerequisite to the filing of a lawsuit against any state employee or agency.  Cal. Gov. Code §§ 905.2, 911.2, 945.4, 950.2; *Shirk v. Vista Unified Sch. Dist.*, 42 Cal.4th 201, 216 (2007).  The California Tort Claims Act ("CTCA") provides the requisites for the filing of a tort claim against employees of the State of California.  Cal. Gov. Code §§ 810-996.6.  Where recovery of damages from a public employee is sought, the CTCA requires the filing, in accordance with its provisions, of all claims for money or damages against the public entity.  Cal. Gov. Code §§ 905, 905.2.  Section 911.2 specifies that a claim relating to injury to the person must be presented within six months of the accrual of the cause of action.  If a government claim was not presented within six months, then Plaintiff had to present an application for leave to present a late claim "with a reasonable time not to exceed one year after the accrual of the cause of action…."  *Id.* § 911.4, subd. (b).

Presenting a government claim within the one-year period is a jurisdictional requirement; the court lacks power to grant relief after this one-year period has passed.  *Shirk*, 42 Cal.4th at 216; Cal. Gov't Code § 946.6; *Last Frontier Healthcare Dist. v. Sup. Ct.*, 33 Cal.App.5th 492, 497 (2019).  Section 945.4 specifies that absent a timely claim, no action may be brought against the public entity.  Furthermore, § 950.2 states that a cause of action against a public employee for injury resulting from an act or omission in the scope of his or her employment is barred if an action against the employing public entity is

barred.  *Fisher v. Pickens*, 225 Cal.App.3d 708, 718 (1990).  The timely claims requirement is also not subject to tolling based on plaintiff being imprisoned.  Cal. Code Civ. Proc. § 352.1, subd. (b); Gov't Code § 945.3.

Defendants assert that Plaintiff's claim accrued on January 23, 2020.  Dkt. No. 44 at 20; Gov't Code § 901.  Therefore, Plaintiff had to present a government claim to the County of Alameda within six months of accrual, and if not, then within one year of that accrual.  Cal. Gov't Code §§ 911.2, 911.4.  Defendants assert that Plaintiff nowhere alleges that he presented a government claim to the County, and the County denies that he did so.  Dkt. No. 44 at 20; Bailey Decl., *passim*.  Defendants point out that all documents sent by Plaintiff to the County on this incident were sent well after he filed the instant action, with the earliest being sent more than a year after the incident itself.  *Id.* at 21.  Defendants assert that Plaintiff cannot now cure this defect, and therefore, all his claims arising under state law are barred.  *Id.*; Gov't Code § 945.4.

In opposition, Plaintiff asserts that there is no state claim presentation requirement because he filed a complaint that included federal civil rights claims.  Dkt. No. 49 at 3, citing *Ford v. Long Beach Unified School Dist.*, 461 F.3d 1087, 1089-90 (9th Cir. 2006).  In reply, Defendants assert that state tort claims included in a federal action may proceed only if the state claims were first presented to the public entity in compliance with state law.  Dkt. No. 57 at 3.

After reviewing the submitted papers, the Court finds there exists no genuine dispute as to any material fact relating to Plaintiff's failure to comply with the state claim presentation requirement.  First of all, there is no dispute that Plaintiff's state law claims accrued on January 23, 2020, such that he had until July 23, 2020 (six months) or January 23, 2021 (one-year) to file a timely government claim.  Cal. Gov't Code §§ 911.2, 911.4.  Defendants have shown that Plaintiff failed to do so.  In support of their argument, Defendants submit the declaration of Rhonda Bailey, the Deputy Clerk of the Board of

Supervisors for the County of Alameda.  Dkt. No. 44-2.  Ms. Bailey attests that her duties include receiving, processing and logging in all government claims, Summonses and Complaints, correspondence and other documents received by the Clerk of the Board from or on behalf of persons seeking monetary or other type of relief from the County.  *Id.* at ¶ 3.  Ms. Bailey attests that after conducting a review of the County's records, she found nine items submitted by Plaintiff between January 1, 2020 to the present.  *Id.* at ¶ 5.  Of the nine items, six items relate to Plaintiff's assertions that some of his personal property had been lost while detained at Santa Rita Jail; none of the six items, which were received on or after April 13, 2020, refers to or mentions an incident that occurred on January 23, 2020.  *Id.* at ¶ 6.  The remaining three items are related to the instant action, but were not received any earlier than June 11, 2021, which is well past the six-month and one year deadlines of July 23, 2020 and January 23, 2021.  *Id.* at ¶ 7.  Furthermore, Plaintiff does not dispute that he did not file a timely government claim to the County of Alameda.  He is simply mistaken that the filing of a federal action removed the state claim presentation requirement under *Ford*, 461 F.3d 1087.  *Ford* merely clarified that the state claim presentation requirement does not apply to *federal* claims; Plaintiff was still required to timely present his *state* claims to the County before filing suit against it or its employees. Cal. Gov't Code § 950.2; *see Fisher*, 225 Cal.App.3d at 718.  He has failed to do so. Accordingly, Plaintiff's state law tort claims are barred by the filing requirements of the CTCA.

## CONCLUSION

For the reasons stated above, Defendants D. Bussell, J. Alvarez, M. Ella, G. Harris, C. Wong, and Alameda County's motion for summary judgment is **GRANTED**.  The retaliation and due process claims against Defendant Bussell are **DISMISSED** with

prejudice.[10]  Furthermore, the remaining state law claims against Defendants Bussell, Alvarez, Ella, Harris, Wong, and Alameda County are **DISMISSED** with prejudice for failure to comply with California's Tort Claims Act.

This order terminates Docket No. 44.

**IT IS SO ORDERED.**

**Dated:  ___August 1, 2022_____**

BETH LABSON FREEMAN
United States District Judge

Order Granting MSJ
PRO-SE\BLF\CR.20\02523Robertson_grant-msj

---

[10] Because the Court finds that no constitutional violation occurred, it is not necessary to reach Defendants' qualified immunity argument.  Dkt. No. 44 at 19.